DAVID W. MARTIN (Bar No. 248636)
davidwmartin@email.com
LAW OFFICE OF DAVID W. MARTIN
5350 JAMES AVENUE
OAKLAND, CALIFORNIA 94618
TELEPHONE:     (510) 332-3943
FACSIMILE:      (510) 601-6944

Attorney for Defendant:
Med-Care Diabetic and
Medical Supplies, Inc.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

WENDY NOEMI CASTILLO
TORREZ,
on behalf of herself and others
similarly situated,

                    Plaintiffs,

        vs.

MED-CARE DIABETIC AND
MEDICAL SUPPLIES, INC., and
DOES 1 through 10, inclusive, and
each of them,

                    Defendants.

No.: **CV 13-9497  DSF  (MRWX)**

**DEFENDANT MED-CARE
DIABETIC AND MEDICAL
SUPPLIES, INC.'S
OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS
CERTIFICATION**

[HON.  DALE S. FISCHER]

Date:          June 9, 2014
Time:          1:30 p.m.
Courtroom:  840

Complaint Filed:     12/27/2013
Trial Date:                -

OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

Page

I.   INTRODUCTION……………………………………………………………… 1
   A.   About Med-Care………………………………………………………… 1
   B.   Product Information Inquiries ………….................................................……. 1
   C.   Med-Care's Calls to Plaintiff……………………………………………… 2

II.  SUMMARY OF ARGUMENT……………………………………………….. 2

III. SHOWING REQUIRED FOR CLASS CERTIFICATION…………………………3

IV.  PLAINTIFF HAS FAILED TO MEET HER BURDEN TO ESTABLISH
    ANY OF THE PREREQUISITES FOR CLASS CERTIFICATION…................4

   A.   The Putative Class Is Not Ascertainable……………………….................. 5

   B.   Plaintiff Has Failed To Make the Requisite Showings of Numerosity,
       Commonality, Typicality, and Adequacy Under Rule 23(a)…………….......6
     1.   Plaintiff Cannot Demonstrate the Class Is Numerous………………… 7
     2.   Plaintiff Has Failed To Demonstrate That There are Questions
        Common to the Putative Class………………………………………... 8
     3.   Plaintiff Has Failed to Demonstrate That Her Claim Is Typical
        of the Class She Purports to Represent……..……………………….. 9
     4.   There Is No Showing of Adequate Representation of a Class………… 10

   C.   Plaintiff Has Not Made the Requisite Showing for Class Certification
       Under Rule 23(b)……………………………………………….................. 11
     1.   Plaintiff Makes No Recognizable Claim Under Rule 23(b)(2)….. ……11
     2.   Plaintiff Has Failed to Establish Predominance of Common
        Questions and the Superiority of Class Action Treatment……............. 12

V.   POLICY AND COMMON SENSE CONSIDERATIONS…………………………13
   A.   TCPA Not Intended to Prohibit Contact Requested by Consumers…….......13
   B.   Potential Chilling Effect on Free Speech and Commerce……………............14
   C.   Class Certification Could Facilitate Fabricated Claims……………………... 14

VI.  CERTIFICATION SHOULD BE DENIED WITH PREJUDICE………………15

VII. CONCLUSION……………………………………………………………… 16

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Amchem Prods., Inc. v. Windsor,*
     521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed.2d 689 (1997) …………..… 12

*Armstrong v. Davis,*
     275 F.3d 849 (9th Cir. 2001) ……………………..……...……..10

*Berry v. Baca,*
     226 F.R.D. 398 (C.D. Cal. 2005) …………………………...…… 7

*Cash v. Swifton Land Corp.,*
     434 F.2d 569 (6th Cir. 1970) …….…………………..…………...…..3

*Castano v. American Tobacco Co.*
     84 F.3d 734 (5th Cir. 1996)…………………………..……...…14

*Cellco P'ship v. Wilcrest Health Care Mgmt. Inc.,*
     Civil Action No. 09—3534(MLC), 2012 WL 1638056 ……………… 13

*Chesbro v. Best Buy Stores, L.P..*
     705 F.3d 913 (9th Cir. 2012)…………………………………………13

*Consolidated Rail Corp. v. Town of Hyde Park,*
     47 F.3d 473 (2nd Cir. 1995)…………………………………………4

*Coopers & Lybrand v. Livesay,*
     437 U.S. 463, 98 S. Ct. 2454, 57 L. Ed.2d 351 (1978) ………………4

*Edwards v. The First Am. Corp.,*
     251 F.R.D. 454 (C.D. Cal. 2008) …………………….……………..12

*Ellis v. Costco Wholesale Corp.,*
     657 F.3d 970 (9th Cir. 2011) …………………………..……………4

*Forman v. Data Transfer, Inc.,*
     164 F.R.D. 400 (E.D. Pa. 1995) …………………...……………..13

*Gen. Tel. Co. of Nw. v.* EEOC,
     446 U.S. 318, 100 S. Ct. 1968, 64 L. Ed.2d 319 (1980) ………………7

*Gen. Tel. Co. of Sw. v. Falcon,*
     457 U.S. 147, 102 S. Ct. 2364, 72 L. Ed.2d 740 (1982) ………………4, 9

*Hanlon v. Chrysler Corp.,*
     150 F.3d 1011 (9th Cir. 1998) …………………………………...…12

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*Henrique v. U.S. Marshal,*
    653 F.2d 1317 (9th Cir. 1981) …………………….………………...7, 15

*In re Bank of America Wage & Hour Emp. Practices Litig.,*
    275 F.R.D. 534 (D. KS 2011) …………………….……………... 15

*In re Paxil Litigation,*
    212  F.R.D. 539 (C.D. Cal. 2003) …………..…..……………….. 7

*Kenro Inc. v. Fax Daily, Inc.,*
    962 F. Supp. 1162 (S.D. Ind. 1997) …………………….………. 4, 5

*Mad Rhino, Inc. v. Best Buy Co. Inc.,*
    2008 WL 8760854 (C.D. Cal. 2008)…………………..…………….4

*Meyer v. Portfolio Recovery Assocs., LLC,*
    707 F.3d 1036 (9th Cir. 2013) ……………………………………9

*Mims v. Arrow Fin. Servs.,*
    *LLC*, 132 S. Ct. 740, 181 L. Ed.2d 881 (2012)……………............... 13

*Nguyen v. Baxter Healthcare Corp.,*
    275 F.R.D. 503 (C.D. Cal. 2011)……………………………… 15

*O'Connor v. Boeing N. Am. Inc.,*
    184 F.R.D. 311 (C.D. Cal. 1998)……………………….............. 5

*Satterfield v. Simon & Schuster, Inc.,*
    569 F.3d 946 (9th Cir. 2009) ……………………………………..14

*Schwartz v. Upper Deck Co.,*
    183 F.R.D. 672 (S.D. Cal. 1999) …………………………………..7

*Szabo v. Bridgeport Machines, Inc.,*
    249 F.3d 672 (7th Cir. 2001) …………………………………….4

*Thomas & Thomas Rodmakers, Inc. v.*
*Newport Adhesives & Composites, Inc.,*
    209 F.R.D. 159 (C.D. Cal. 2002)…………………………………… *3*

*Vandervort v. Balboa Capital Corp.,*
    287 F.R.D. 554 (C.D. Cal. 2012) ……………………….…………5

*Vigus v. Southern Illinois Riverboat/Casino Cruises, Inc.,*
    274 F.R.D. 229 (S.D. Ill. 2011) …………………….………….....5, 9

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541, 180 L. Ed.2d 374 (2011) ………….......................... 3, 4, 8, 11, 12

# TABLE OF AUTHORITIES

**Page(s)**

*Williams v. Oberon Media, Inc.,*
    468 Fed. Appx. 768 (9th Cir. 2012) …………………………………...4,5

*Zinser v. Accufix Research Institute, Inc.,*
    253 F.3d 1180 (9th Cir. 2001) …………………………………………3

## STATUTES

47 U.S.C. § 227 *et seq.* (Telephone Consumer Protection Act)………………*passim*

47 U.S.C. § 227(b)(3)…………………………………………………………13

## RULES

Fed. R. Civ. Pro. 23………………………………………………………*passim*

Fed. R. Civ. Pro. 23(a)……………………………………............. 3, 6, 7, 8, 11

Fed. R. Civ. Pro. 23(a)(1)……………………….............………………6

Fed. R. Civ. Pro. 23(a)(2)……………………………………………6, 8, 9

Fed. R. Civ. Pro. 23(a)(3)…………………………………………6, 9, 10

Fed. R. Civ. Pro. 23(a)(4)…………………….............………………6, 10

Fed. R. Civ. Pro. 23(b)……………………………………………… 3, 11

Fed. R. Civ. Pro. 23(b)(2)……………………............…………………11

Fed. R. Civ. Pro. 23(b)(3)……………………............…………………11, 12, 13

## I.    **INTRODUCTION**

The pertinent facts of this case are not in dispute. Defendant Med-Care Diabetic and Medical Supplies, Inc. ("Med-Care") responded to a written request by non-party Celeste Bernardo to contact her with information about a medical device. Unfortunately, Ms. Bernardo provided Med-Care with the wrong telephone number (replacing a "2" with a "3") and Med-Care called that number - which belonged to Plaintiff.

Plaintiff alleges that Med-Care's conduct violated the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq.* ("TCPA"), and seeks to litigate the issue on behalf of a nationwide class.

### A.    **About Med-Care**

Med-Care is a national medical supplier and one of four companies authorized to service both Medicare Part B and Part D patients by mail. Med-Care offers patients the convenience of delivered services and reduces medical reimbursement, and as a consequence saves time and money for both patients and the Medicare system as a whole.

### B.    **Product Information Inquiries**

Med-Care promotes its products, inter alia, through internet-based surveys that, once completed by the prospective customer, ask the customer whether they wish to be contacted with additional information about the product.

If the customer requests to be contacted, the customer fills-out a form on which the customer can input his or her name, address, e-mail address and telephone number. The consent form includes a specific authorization and consent to receive automatically dialed calls.

Typically within forty-eight hours of the time it receives the form, Med-Care will attempt to contact the customer via telephone from its own corporate headquarters. The call center uses equipment that automatically dials the

-1-

customer's number, and an agent is connected to the call. Med-Care uses only live customer service agents, as opposed to computers, to speak with its customers.

### C.   Med-Care's Calls to Plaintiff

Med-Care agrees that Plaintiff did not consent to calls from Med-Care. The unsolicited calls from Med-Care were, in fact, Med-Care's response to an inquiry from a third-party, Celeste Bernardo, who expressly and specifically requested a call from Med-Care. However, Ms. Bernardo entered a "wrong number" when she requested the call. Med-Care's investigation in response to this lawsuit has revealed that Ms. Bernardo, a prospective Med-Care customer, inadvertently transposed a "2" with a "3" and requested that Med-Care call Plaintiff's number, instead of her own. (David W. Martin Declaration in Opposition ¶¶ 12-15, EXHIBIT B.)

Plaintiff is well-aware of these facts, and has been for more than one month, but she has failed to mention them to the Court in her class certification motion.

## II.   <u>SUMMARY OF ARGUMENT</u>

Plaintiff's motion to certify a class must fail because Plaintiff's showing falls far short of the requirements for class certification.

Plaintiff complains that she received calls that she did not request, and that fact is not in dispute. However, the calls in question are not the sort of calls the TCPA was enacted to prevent, but resulted from the mistake of a third-party consumer.

Plaintiff has not offered any meaningful proposed class definition or demonstrated that even a handful of putative class members might have suffered similar "injuries." Perhaps more important, Plaintiff offers no **practical** suggestion as to how the identities of putative class members might be ascertained.

Even if a group of putative class members could somehow be identified, an individualized inquiry into the events that triggered the call would dominate the

litigation, thus undermining the economic and judicial efficiencies class actions seek to create.

Representative treatment of Plaintiff's claims would defy common sense. The putative class of those who received such calls is not ascertainable, and any such calls would have been the result of a consumer-side mistake unrelated to the telemarketing misconduct the TCPA seeks to regulate.

Plaintiff's motion for class certification should be denied, with prejudice.

## III.  SHOWING REQUIRED FOR CLASS CERTIFICATION

A class is not maintainable as a class action by virtue of its designation as such in the pleadings. *Cash v. Swifton Land Corp*,. 434 F.2d 569, 571 (6th Cir. 1970).  A plaintiff seeking to certify a class bears the burden of establishing the propriety of class certification.  *Zinser v. Accufix Research Center, Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

The requirements for class certification are generally governed by Rule 23 of the Federal Rules of Civil Procedure (which will be referred-to herein as "Rule(s)"). In addition, and although not specifically mentioned in Rule 23, ascertainability of class members is a threshold prerequisite to class certification. *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 163 (C.D. Cal. 2002).

Class certification involves a multi-faceted analysis (discussed in detail below). Plaintiff must initially establish that an ascertainable class exists, then demonstrate that all of the requirements of Rule 23(a) are satisfied. Finally, the plaintiff has the burden to show that at least one of the provisions of Rule 23(b) is satisfied. *See Zinzer,* 253 F.3d at 1186.

A party seeking class certification must affirmatively demonstrate his or her compliance with Rule 23 – i.e., he or she must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, and other class certification requirements. *See Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct.

2541, 2551, 180 L. Ed.2d 374 (2011). Certification is only proper if, after "rigorous analysis" which may entail some overlap with the merits of the plaintiff's claim, the prerequisites of Rule 23 are satisfied. *Id.*

While courts generally accept the allegations of the complaint as true in determining class certification, no such presumption attaches to a complaint's allegations on certification issues. *See Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675 (7th Cir. 2001). The Court must consider the merits of the claims to the extent they overlap with the Rule 23 requirements, *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011), as the class determination generally involves considerations that are "enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364, 72 L. Ed.2d 740 (1982) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469, 98 S. Ct. 2454, 57 L. Ed.2d 351 (1978)).

Class certification requires examination of the pleadings and extrinsic evidence to determine whether the Rule 23 requirements have been met and whether the class action device is a fair and efficient method for litigating the controversy. *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 484 (2nd Cir. 1995). Where the plaintiff does not meet the requirement of Rule 23, class certification should be denied. *See, e.g*., *Williams v. Oberon Media, Inc.*, 468 Fed. Appx. 768, 770 (9th Cir. 2012); *Mad Rhino, Inc. v. Best Buy Co. Inc.*, 2008 WL 8760854 (C.D. Cal. 2008) (certification denied for lack of ascertainability).

Here, Plaintiff's class certification motion is not supported by fact, law, or common sense, and the Court should deny her motion, with prejudice.

IV.   **PLAINTIFF HAS FAILED TO MEET HER BURDEN TO ESTABLISH ANY OF THE PREREQUISITES FOR CLASS CERTIFICATION**

Although Plaintiff, in her boilerplate motion for certification, broadly asserts that her case meets the requirements, **none** of the prerequisites for class certification have been demonstrated.

### A.    The Putative Class Is Not Ascertainable

Defendant called Plaintiff because a third-party made a typographical mistake. As detailed in the Declaration of Dr. Steven Silverman, Defendant responded to a prospective customer's request for a call.  (Dr. Steven Silverman Declaration in Opposition ¶¶ 15-17.) Plaintiff has not made any showing that the putative class is ascertainable or that other putative class members even exist. The circumstances simply do not support a class action.

"Before a class may be certified, it is axiomatic that such a class must be ascertainable." *Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554, 557 (C.D. Cal. 2012). Put another way, a class cannot be certified if a plaintiff has not established an objective way to determine who is a member of the class.  *Williams v. Oberon Media, Inc.*, 468 Fed. Appx. 768, 770 (9th Cir. 2012) (affirming denial of class certification for lack of ascertainability).

It is the plaintiff's burden to demonstrate that the proposed class definition is "precise, objective, and presently ascertainable." *O'Connor v. Boeing N. Am. Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998).

The class must be ascertainable without inquiring into the merits of the case."*Vandervort*, 287 F.R.D. at 557.  Accordingly, where the determination of who is in a purported TCPA violation class would require the court to "delve into the issues of liability," the class is not ascertainable and class certification is improper.  *Id.* at 557-58.  The plaintiff must offer an objective way to determine membership in the class.  *Id.* at 558-59; *see also Vigus v. Southern Illinois Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 234-235 (S.D. Ill. 2011) (proposed class overbroad and not ascertainable because it likely included individuals who consented); *Kenro Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1169-1170 (S.D. Ind. 1997) (proposed class not ascertainable because individual inquiries with regard to consent would be required).

Here, Plaintiff's suggested class definition[1] is conclusory. Plaintiff baldly asserts that class membership can be determined by objective criteria, but fails to adequately define the putative class or suggest a meaningful method to determine its membership.

The reality is that Defendant's liability in each putative class member's case would turn on an individualized analysis as to the facts underlying the consent that prompted Defendant to call each putative class member's telephone, and each might entail a different legal analysis (for example, an authorization designed to wrongfully trigger allegations of TCPA liability).

As a practical matter, Plaintiff cannot demonstrate an objective way to ascertain the identity of others who might have been called by Defendant as the result of a third-party error, and the class is therefore not ascertainable.

**B.      Plaintiff Has Failed To Make the Requisite Showings of Numerosity, Commonality, Typicality and Adequacy Under Rule 23(a)**

Rule 23(a) permits a class action "only if" Plaintiff demonstrated that: (1) the class is so *numerous* that joinder of all members is impractical; (2) there are questions of law or fact *common* to the class; (3) the claims or defenses of the representative parties are *typical* of the class; and (4) the representatives will fairly and *adequately* represent the interests of the class (emphasis added). These requirements will be referred to herein as: (1) numerosity;  (2) commonality; (3) typicality; and (4) adequacy.

---

[1]  Plaintiff seeks to certify a nationwide class of "[a]ll persons within the United States who received any telephone call/s from Defendant or its agent/s and/or employee/s to said person's cellular telephone made through the use of any automatic telephone dialing system or with an artificial or prerecorded voice without express consent within the four years prior to the filing of the Complaint." (Plaintiff's Memorandum, Dkt. 19, p. 2:9-14.)

Although Plaintiff has the burden to establish **all** of these requirements, she has not adequately demonstrated any of the Rule 23(a) prerequisites are satisfied in this case.

### 1.    Plaintiff Cannot Demonstrate the Class Is Numerous

The determination as to whether the putative class is comprised of enough members to justify class certification requires examination of the specific facts of the case. *Gen. Tel. Co. of Nw. v.* EEOC, 446 U.S. 318, 330, 100 S. Ct. 1968, 64 L. Ed.2d 319 (1980). The Court must recognize common sense practicalities of the situation presented. *Henrique v. U.S. Marshal*, 653 F.2d 1317, 1320 (9th Cir. 1981).

Here, it is not disputed that Plaintiff is the "victim" of an unsolicited call because a third-party mistakenly requested that Defendant call Plaintiff's mobile telephone number. Common-sense tells us that the group of individuals who received calls on their mobile telephones from Defendant under similar circumstances is small, if it exists at all.

Although there is no precise numerical threshold to class certification, the requirement is not satisfied when the number of class members cannot even be estimated. *See In re Paxil Litigation*, 212  F.R.D. 539, 549 (C.D. Cal. 2003) (citing *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 681 (S.D. Cal. 1999) (numerosity not met when "[b]ased on the information presented to the Court, the number of possible class members could range from as few as the class representatives… to millions").

While a plaintiff need not show the precise number of class members, she does bear the burden of showing that joinder is impractical, and the mere allegation of numerosity is not sufficient to establish this element. *Berry v. Baca*, 226 F.R.D. 398, 403 (C.D. Cal. 2005).

Plaintiff's unsupported allegation that "there are thousands of class members" (Plaintiff's Memorandum, Dkt. 19, p. 8:2-3) defies common sense and

*Defendant's Opposition to Motion for Class Certification*

does not approach the showing necessary to establish Rule 23(a) numerosity requirement.  Plaintiff has not demonstrated that even a handful of putative class members exist.

### 2.     Plaintiff Has Failed to Demonstrate That There Are Questions Common to the Putative Class

The language of the Rule 23(a)(2) requirement that there must be "questions of law or fact common to the class" is "easy to misread, since any competently crafted class complaint literally raises common questions." *Dukes*, *supra*, 131 S. Ct. *at* 2551. (internal question marks and citation omitted). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury…not…merely that they have all suffered a violation of the same provision of the law." *Id*.

Here, Plaintiff's mere allegation that the putative class received calls from defendant on their mobile phones in violation of the TCPA fails to satisfy the commonality requirement. "What matters to class certification ... is not the raising of common questions – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation…. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id*. (citation omitted, emphasis in original).

Plaintiff's boilerplate complaint and class certification motion simply allege in general terms without identifying any particular defect common to all putative class members, except that Plaintiff claims the issue of consent is common to the putative class because of "Defendant's common practice of making automated and/or prerecorded voice calls to consumers' cellular telephones without their prior express consent to such type of calls." (Plaintiff's Memorandum, Dkt. 19, p. 10:8-10.) However, Plaintiff is aware that her call was the result of a third-party's consent to call her number and has no factual basis to allege Defendant's "common

*Defendant's Opposition to Motion for Class Certification*

practice" of making unauthorized calls. Quite to the contrary, the uncontroverted evidence reveals that Defendant does not make calls without express consent to call a specific number. (*See* Dr. Steven Silverman Declaration in Opposition ¶ 14.)

In the absence of more specific allegations and a showing of commonality of any factual or legal claims, Plaintiff has failed to meet her burden of proof under Rule 23(a)(2).

### 3.   Plaintiff Has Failed to Demonstrate That Her Claim Is Typical of the Class She Purports to Represent

Rule 23(a)(3) requires the claims or defenses of the representative parties to be typical of the claims or defenses of the class. Where proof of a named plaintiff's claims does not resolve the class claims, typicality is lacking.  *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 159 (1982).

Where, as here, a TCPA defendant obtains consent to call a number, but the plaintiff who was the recipient of the call is not the individual who consented to the call, the plaintiff's claims are not typical within the meaning of Rule 23(a)(3). See, e.g., *Vigus*, *supra*, 274 F.R.D. at 236 (denying class certification on typicality grounds where the defendant had obtained consent from the previous owner of the telephone number, but called after the number had been transferred to the plaintiff).

In support of her argument that her claims are typical of the putative class, Plaintiff misrepresents to the court that "[t]his case is similar to *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2013)." (Plaintiff's Memorandum, Dkt. 19, p. 11:18-20.)

The *Meyer* decision, however, is inapposite and does nothing to support Plaintiff's position. The *Meyer* Court held that whether call recipients consented to the calls after the fact was irrelevant to class certification because the debt collection provisions of the TCPA required express consent *prior* to the time of the call. *Id at* 1042 (emphasis added).

Plaintiff, aware of the fact that a third-party requested that Defendant call Plaintiff's telephone number, nonetheless argues that typicality exists because of "Defendant's common practice of making autodialed and/or prerecorded calls to cell phones without evidence of prior express consent..." (Plaintiff's Memorandum, Dkt. 19, p. 11:1-3.) although the evidence contradicts the assertion.

Plaintiff correctly points-out that typicality is met if the claims of each class member arise from the same "course of conduct" and typicality focuses on a comparison of the named plaintiff's claims with those of the class, citing *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001). (Plaintiff's Memorandum, Dkt. 19, p. 11:1-3.) However, Plaintiff makes no showing to support any injurious "course of conduct," but rather claims that Defendant's response to a third party's request to call Plaintiff's telephone number violated the TCPA.

In the absence of specific allegations as to how Defendant's response to the third-party's contact request constituted an "injurious course of conduct," Plaintiff has not met her burden under Rule 23(a)(3).

### 4. There Is No Showing of Adequate Representation of a Class

Plaintiff asserts that the she will adequately represent the class whose statutory rights under the TCPA were violated by "Defendant's practice of making autodialed and/or prerecorded calls without prior express consent" and ignores the known factual inaccuracy of the calling practice allegations. (Plaintiff's Memorandum, Dkt. 19, p. 12:20-21.)

Plaintiff has not adequately defined an ascertainable class, and Plaintiff therefore cannot be its adequate representative.

The fact of the matter is that Plaintiff has embarked on a fishing expediton in hopes to catch a TCPA violation. Plaintiff's position begs the class certification question and essentially amounts to "if there were a class, then my representation would be adequate."

**C.     Plaintiff Has Not Made the Requisite Showing For Class Certification Under Rule 23(b)**

In addition to the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), Plaintiff must also establish that the class claim falls within one of the three types of maintainable class actions described in Rule 23(b).

Plaintiff seeks "hybrid" certification under (b)(2) and (b)(3).

**1.     Plaintiff Makes No Recognizable Claim Under Rule 23(b)(2)**

To maintain a Rule 23(b)(2) class, Plaintiff must demonstrate that Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

Plaintiff cites the *Dukes* decision, *supra*, to support the proposition that this action is maintainable under Rule 23(b)(2) (Plaintiff's Memorandum, Dkt. 19, p. 13:23-24), however, the *Dukes* Court rejected certification under Rule 23(b)(2) because it applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each class member would be entitled to an individualized award of monetary damages. *Dukes,* 131 S. Ct. *at* 2557.

Here, Plaintiff has not specifically requested injunctive or corresponding declaratory relief, nor has Plaintiff adequately demonstrated any potential claim for such relief that would justify representative treatment of this action. Further, even if Plaintiff could identify an ascertainable class, damages would depend on an individualized analysis of the number and nature of the calls made to them.

Plaintiff's claims simply do not comport with the literal requirements or any established prior application of Rule 23(b)(2) and Plaintiff therefore cannot maintain a class action under the Rule.

**2.      Plaintiff Has Failed to Establish Predominance of Common Questions and the Superiority of Class Action Treatment**

Plaintiff contends that a class is maintainable under Rule 23(b)(3), which requires a showing that questions of law or fact common to class members *predominate* any question affecting only individual members, *and* that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy (emphasis added).

To determine whether common questions predominate, the inquiry is whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S. Ct. 2231, 138 L. Ed.2d 689 (1997). The requirement focuses on the relationship between the common and individual issues, requiring that the common issues be qualitatively substantial in relation to the issues peculiar to the individual class members. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998); *Edwards v. The First Am. Corp.*, 251 F.R.D. 454, 458 (C.D. Cal. 2008) ("Predominance is determined not by counting the number of common issues, but by weighing their significance."). The Court must consider whether issues unique to individual class members are likely to render adjudication by representation impractical. *Dukes, supra,* 131 S. Ct. *at* 2556.

Here, a single issue would predominate among putative class members – whether the consent received by Med-Care satisfied the requirement of "express consent" under the TCPA.

In Plaintiff's case, ascertaining the circumstances that resulted in Med-Care's calls to Plaintiff's mobile telephone number required an attorney who employed a private investigator to locate the property owner where the third-party who requested the call resides. (Declaration of David W. Martin in Opposition ¶¶ 5-11). As a practical matter, ascertaining the motivations for other members of the putative class might be more difficult or impossible, but each would require an

individualized analysis that would undermine the efficiencies sought to be achieved in class actions.

The fact that each putative class member's claim would be dominated by an individualized analysis of the request for the call would render class action treatment impractical of this case, if not impossible.

Here, class action treatment is an inferior alternative to small claims court for adjudication of the claims of the putative class members (if any exist). The TCPA's statutory remedy is designed to provide adequate incentives for an individual plaintiff to bring suit on his own behalf. *See Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 404 (E.D. Pa. 1995). Individual plaintiffs may bring TCPA cases in small claims court without an attorney. *See, e.g.* 47 U.S.C. § 227(b)(3); *Cellco P'ship v. Wilcrest Health Care Mgmt. Inc*, Civil Action No. 09-3534(MLC), 2012 WL 1638056), at *8 (explaining that Congress intended plaintiffs to pursue their TCPA claims in state small claims courts).

Plaintiff's complaint and class certification motion thus fail to satisfy the requirements of Rule 23(b)(3).

## V.   POLICY AND COMMON SENSE CONSIDERATIONS

Certification of the putative class in this case will not advance the policies underlying the TCPA, and a practical analysis of the implications of certification of the putative class obviates that representative treatment of this case would be improper. The Ninth Circuit has emphasized, in the context of alleged TCPA violations, courts should "approach the problem with a measure of common sense." *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012).

### A.   TCPA Not Intended to Prohibit Contact Requested by Consumers

Not every call constitutes an actionable offense under the TCPA. Rather, the TCPA selectively targets and seeks to prevent "the proliferation of intrusive, nuisance calls." *Mims v. Arrow Financial Services, LLC,* 132 S. Ct. 740, 744, 181 L. Ed.2d 881 (2012).

The TCPA was intended to protect individuals from unsolicited automated telemarketing calls, and to deter callers from using such calls in an unregulated fashion. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

Common sense tells us that the TCPA was not enacted to prohibit calls made when a third-party prompts a call as the result of a typographical error, and Med-Care's attempt to respond to prospective patients is not the sort of conduct the TCPA seeks to proscribe.

### B.     Potential Chilling Effect on Free Speech and Commerce

Class certification is not a neutral decision – it creates substantial and, if the case is meritless, unfair pressure on the defendant to settle, so much so that class treatment has been referred to as "judicial blackmail." *See Castano v. American Tobacco Co.,* 84 F.3d 734, 736 (5th Cir. 1996) (class certification creates insurmountable pressure, whereas individual trials would not).

A finding of class-wide liability under the circumstances of this case could have a serious chilling effect on commerce and free-speech. Indeed, the threat of litigation when responding to customer inquiries could have several detrimental effects unrelated and contrary to the consumer-protection objectives of the TCPA: (1) sellers may be reluctant to respond to consumer inquiries; (2) additional and unnecessary costs might increase consumer pricing; (3) producers may be reluctant to advertise their products; and (4) consumer choices might be reduced.

Third-party conduct simply cannot serve as the foundation for liability to a class. Important consumer product industries, such as the medical supplies at issue in the instant case, might be undermined by the threat of costly litigation when there is no compelling policy basis to proscribe the conduct underlying the litigation.

### C.     Class Certification Could Facilitate Fabricated Claims

As a practical matter, class certification of TCPA claims in which a third-party provides consent for the call would open the floodgates for fraud. The court

must look at the common sense practicalities of the situation presented. *Henrique v. U.S. Marshal*, 653 F.2d 1317, 1320 (9th Cir. 1981).

If this case were permitted to proceed as a class action, unscrupulous would-be TCPA plaintiffs or plaintiff's attorneys could wrongfully, and without detection, intentionally submit fabricated contact requests in order to trigger litigation and pressure defendants to settle despite the spurious nature of the underlying claims.

## VI.   CERTIFICATION SHOULD BE DENIED WITH PREJUDICE

Despite Plaintiff's request to delay the certification process (Plaintiff's Memorandum,  Dkt. 19, 1:19-26, 17:14-17; Mankin Declaration Dkt.19-2, ¶ 6), the circumstances of this case do not warrant further class certification proceedings.

Where a plaintiff seeks discovery to establish a prerequisite for class certification, the plaintiff must demonstrate that discovery is likely to substantiate class allegations. *Nguyen v. Baxter Healthcare Corp.*, 275 F.R.D. 503, 505 (C.D. Cal. 2011). However, courts may prevent "fishing expedition" type discovery and impose reasonable limitation as to scope in order to accommodate privacy concerns of the putative class members. *In re Bank of America Wage & Hour Emp. Practices Litig.*, 275 F.R.D. 534, 543 (D. KS 2011).

Here, Plaintiff has not made any showing that additional discovery might resolve her inability to ascertain a class that satisfies the requirements of Rule 23.

///
///
///
///
///
///
///
///
///

*Defendant's Opposition to Motion for Class Certification*

**VII.   CONCLUSION**

For the reasons set-fort above, the Court should deny Plaintiff's motion for class certification, with prejudice, and such other and further relief as the Court deems just and proper.

Dated: May 19, 2014

Law Office of
DAVID W. MARTIN

_____/s/_____
David W. Martin
davidwmartin@email.com
Attorney for Defendant:
Med-Care Diabetic and
Medical Supplies, Inc.

*Defendant's Opposition to Motion for Class Certification*